220-463-WC PSSI Appellant v. Illinois Workers' Compensation Commission, Amado Uyoha-Apelie. Mr. Drinkwine, you may proceed. May it please the court and good afternoon again, Council. My name is Chris Drinkwine and I represent the appellant employer PSSI Incorporated. My client contends that three decisions by the commission were against the manifest weight of the evidence. That petitioner proved an accident occurred at work on June 21, 2013. Second, that petitioner's lower back condition was causally related to that accident. And third, that petitioner was entitled to benefits under the act. Factually, it's important to remain mindful in this case that before the alleged June 21, 2013 accident, plaintiff injured himself at work on August 17, 2012, while pushing a heavy tank that apparently had malfunctioning wheels. The commission ultimately denied that claim and that claim is not before this court. However, that claim is still important in this appeal because it bears on the petitioner's credibility and also upon the causation issue. So 10 months after hurting his back while pushing the tank with the bad wheels, petitioner purportedly slipped and fell on ice while at work and landed on his back. Petitioner testified before the arbitrator that Pedro Grande witnessed the fall, that they nevertheless ended up finishing their shift that day, and that he went to the doctor on the following day. This testimony stands in sharp contrast to the medical records, which reflect that the petitioner reported to the doctors that he went to the doctor on the same day that he fell at work. So this is PSSI's first and primary contention, that the commission's determination that petitioner proved a work accident on June 21, 2013 was against the manifest weight of the evidence because the commission didn't recognize and take into account the discrepancy between what petitioner told the arbitrator and what he told the doctors. And he's testifying some four years later, correct? Just about exactly, your honor. A little bit short of four years. Let me ask you this. Who's Dr. Carrion? Dr. Carrion is the first doctor that the petitioner saw when he went to Vista Medical Center, which is the second medical center. Was it on the same day of the alleged accident? Correction, I said that wrong, your honor. Dr. Carrion is a doctor at New Life Medical Center. That's the second one he went to. The first medical center he went to was Vista Medical Center. And you're complaining he didn't tell Dr. Estrella? He told both Dr. Estrella at Vista and Dr. Carrion at New Life that he fell that day, and those records were made on June 21, 2013. So that's inconsistent with his testimony before the arbitrator when he said in no uncertain terms that he didn't go to the doctor until the day after he fell. Well, what about the argument he just had a bad memory that day because the contemporaneous medical records with the other doctors established the accident date on June 21st? Okay, so we got it wrong by a day by memory. Well, it's not a matter of dates, your honor. We wouldn't expect anyone to remember calendar dates. The fact of the matter is, your honor, that when he testified before the arbitrator, he said that he slipped and fell on the first day, and then the following day he went to the medical, he went to the doctor, both of them. Whereas the medical records reflect that when he got to the doctor on whatever day he got there, he said, I fell that day, not the day before. So there's an inconsistency with respect to the day of this purported fall between the medical records and the testimony before the arbitrator. But you're not contesting that there was no accident at any point, are you? We're maintaining that he didn't satisfy his burden of proof, your honor, that he had an accident at work because of that inconsistency and the other indicia of his lack of credibility throughout the record. And the problem with the case, your honor, is that the commission didn't recognize the discrepancy that I'm describing, because they specifically said at the beginning of their findings, the first sentence in their findings of fact was that petitioner testified on that on June 21st, 2013, he slipped and fell on a frozen floor near a freezer. That's incorrect. He did not testify to that. He testified that he went the day after that he slipped and fell. And we know from the medical records that that day after was June 21st, 2013. So that's incorrect right out of the gate. And then the significant thing, your honors, is the first paragraph of the conclusions of law, where the commission concludes that the medical records corroborate the petitioner's testimony before the arbitrator, they do not, for that very reason. And respectfully, your honors, if the commissioners would have recognized that discrepancy, they couldn't have and wouldn't have made that conclusion. And of course, the significance of this is that they looked at all the rest of the evidence through the wrong lens because they didn't appreciate that discrepancy. So basically, you're saying that that discrepancy is fatal in and of itself to the claimant's case? No, your honor, I'm saying that cumulatively, that discrepancy together with the petitioner's uncorroborated testimony, i.e. he didn't call Pedro Grande, the fact that petitioner didn't report a lower back injury until he got to New Life, the second place he went, the inconsistent reasons for going to New Life, along with Dr. Hennessey's experience with the petitioner where he questioned the veracity of the petitioner's claims, and even Dr. Chanduri's detection of some deceit. Dr. Chanduri is also a New Life doctor, who at one point noted in his charting that the petitioner reported a pain level of seven out of 10. But on physical examination, he also in that same chart note indicated that the petitioner was in no apparent distress. That's not consistent. Let me ask you, Dr. Chanduri is who now? Was he a treating physician for the claimant? He is, your honor. He's one of two treaters that are significant in this case, him and Dr. Erickson. Didn't Chanduri give a causal connection opinion in favor of the claimant? Or was that not right? His causal opinion, your honor, is ambiguous and vague and speculative in our view, because he's unable to say that the petitioner's lower back injury was the result of one or the other of the accidents. His opinion, if anything, refers to the August 2012 accident. And in an effort to... Was the accident in August or September? Well, Judge, there's a little bit of confusion about that. The pushing of the tank was in August, August 17th, 2012. He didn't go to the doctor for that injury until September of 2012. And the arbitrator and the commission refer to that September 11th, 2012 date. But that's all about the previous tank pushing injury. And as the record reflects, the arbitrator dealt with the two claims simultaneously. Whereas when the commission received the case, they entered two different orders. And there's an end note explaining that on each of the purposes the same as the August date. So there's a 2012 accident at work, and there's a 2013 accident at work. And both the experts, that is to say, both the treaters, Drs. Conduri and Erickson, didn't give a sufficient opinion that to a reasonable degree of medical certainty, that the June 21st reported accident was a cause of his lower back condition. And I think it's a very, it's an important but distinctive distinction, subtle distinction. They say that ultimately Dr. Erickson says it could have been either one. And he also says it could have been a degenerative condition that has nothing to do with his work injury. And nowhere though does he say that the June 21st, 2013 accident was the cause. And then merely just saying it could have been the other two, that would have been fine. The case law provides for other causes. But there's no opinion at the get go that the June 21st, 2013 accident was a cause. It's just a possibility, as was the August 17th, 2012 accident, as was his degenerative condition. So there's a distinction there between the idea that there can be multiple causes, and whether we even have an opinion at all from either of these Dr. Dury and Erickson, that the June 21st, 2013 accident was. Wait a minute, let me just ask you something. According to the evidence, Dr. Shen Dury, he's an anesthesiologist, correct? Yes. Well, pain management. Yeah, I think that's right. He opined that the claimant's low back condition was the result of the accident, correct? Exactly. So how does that not help the claimant? Because there's two accidents, Your Honor. We don't know which one he's talking about. And in fact, if you look carefully at the two documents, record site 274 is his opinion. And if anything, he's talking about the August 2012 accident, because in the sentence after that, says he failed conservative treatment. In fact, it has been almost a year since the onset of the initial injury. And he's writing this in June of 2013. So he's talking about the August injury, not the most recent injury. What was the date of his, you said it was before he reported in June? What? What was? I thought he presented to Dr. Shen Dury on June 26. That's right. And on that date, Dr. Shen Dury wrote in his chart that it's been almost a year since the onset of the initial injury. And my point, Your Honor, is that when he says that he means the August 2012 injury, because that's the one that would have been almost a year ago, not the one that happened on June 21, for the same year. So Shen Dury doesn't doesn't provide an adequate causation opinion, nor does Dr. Erickson. In fact, the only adequate causation opinion comes from Dr. Hennessey, and his opinion is far more detailed, far more credible. And I think in large part, you know, we're accused of repackaging our causation argument, when we argue in the alternative, with respect to our third contention, that the dissenting commissioner, Commissioner Simpson got it right. And I think that's exactly right. We are repackaging our causation argument. And I think Commissioner Simpson saw that it was Dr. Hennessey's opinion as to causation, not only that it was the only one that could be relied on, but it was the persuasive one. So that I think that's right. I think we did repackage that with respect to the third contention. Moving back to the first contention, Your Honor, which is our primary content, content to you. I want to be clear, which is what? Well, Your Honor, that they that the commission decision that he proved an accident on June 21, 2013, was against the manifest way to the evidence. Your Honor, we're not contending that any one of these credibility issues, in and of itself, is the stuff of which a manifest way to the evidence reversal is made. Our argument is that the initial discrepancy, together with the uncorroborated testimony, meaning he didn't call Pedro Grande, and we all know that he doesn't have to, we all recognize the cyber case that says uncorroborated testimony can be accepted by the commission, except where the other facts and circumstances preponderate the opposite conclusion. That's PSSI's argument in this appeal. And that preponderation comes from not only the uncorroborated testimony, he didn't call Grande, but all the other circumstances, including a failure to report a low back injury until he got to new life, and didn't say anything about it at Vista. Dr. Hennessey's detailed questioning of the petitioner's veracity based on his IME examination, the pain indication, the pain level indication to Dr. Chonundri that I mentioned, and also Commissioner Simpson's serious reservations concerning petitioner's credibility. When you take the discrepancy that the commission failed to recognize, and you put it together with all those other circumstances, this is a cumulative analysis that results in a decision that was against the manifest weight of the evidence. And that's not a common thing, we recognize that. But putting it all together, we have it in this case. And we just don't know how the commission would have evaluated these different circumstances, the uncorroborated testimony, the failure to report the lower back injury, and so forth. The red light is on, Mr. Drinkwine. You'll have time and reply. Thank you very much. Thank you. Mr. Schmitz, you wish to respond? You have to turn your mic on, Mr. Schmitz. That would help. Thank you, Justice Holdredge. Good afternoon, and may it please the court, Brenton Schmitz on behalf of the petitioner and the claimant in this case, Mr. Amado Uyoa. I want to start with what Mr. Drinkwine characterized as his first and primary contention, the concern about the date of the accident. I agree. Petitioner's sworn trial testimony was that he went to the doctor the following day after the accident. The accident was June 21st. The most common reading of that from any layperson would be that he went to the doctor on June 22nd. The commission, in its decision, acknowledged the discrepancies in the histories, found them to be insignificant, and ultimately found the petitioner proved his case with respect to the occurrence of the accident. It is not as if the commission ignored the discrepancies. The commission specifically said, we acknowledge the discrepancies, and we do not find them to be persuasive. I want to point out as well that as Mr. Drinkwine concedes in his brief and concedes in his argument, the standard of review is the manifest way to the evidence. So I'm not limited in my argument, and this court is not limited in its consideration, merely to the rationales given by the commission in its decision, but we can go to the record for other rationales, for other bases by which the commission could have come to that determination. I want to highlight one that I find to be very, very important. Looking at page 152 of the record, this is the initial intake form at New Life Medical Center, which was the second doctor petitioner went to on June 21st, 2013. About a third of the way down the page is a blank space for DOI. I would interpret that to mean date of accident, and it is handwritten in there, 6-20-13. That would be the day before the commission determined this accident occurred. Next to that is an illegible word, followed by 6-21-13, 2-30 a.m. Now this makes sense. Now we understand what petitioner meant when he said the following day. The most reasonable inference I would draw from page 152 of the record is that petitioner was working third shift. He was working overnight, over midnight. The injury occurred, and when petitioner said he went to the doctor the following day, what he meant was I went to the doctor the next morning, which for somebody who's working third shift, who's working overnight, that's a reasonable interpretation of the following day. This is further supported by petitioner's testimony as to what he was doing at the time of the accident. He's repairing a cheese machine. He's not operating a cheese machine. He's not making cheese. He's repairing a cheese machine. He's cleaning a cheese machine. That's the kind of thing a third shift employee would do, and so I don't find it incredibly persuasive that petitioner testified he went to the doctor the following day when that explanation is there, and it's plausible. Again, the commission acknowledged the discrepancies in the record, acknowledged that there was some confusion, and it wasn't ultimately clear exactly what the timeline was. The commission chose to ultimately find that petitioner met his burden of proving an accident occurring on June 21st. Even the dissenting commissioner agreed that the accident had been proven on June 21st, 2013. The dissenting commissioner's argument was based largely on causal connection, was based largely on the medical evidence and the opinions of Dr. Hennessey versus Dr. Erickson, Dr. Chanduri, Dr. Jane, Dr. Morgan, Dr. Carione, all of these treating physicians who opined in the case. That was what the dissenting commissioner was getting at. She was not pushing at the issue of accident and whether or not the accident had occurred. Counsel, can you comment on the opposing counsel's characterization of some of the expert testimony of being somewhat ambiguous? Absolutely. I do agree, specifically talking about Dr. Chanduri's causal connection opinion. Dr. Chanduri's causal connection opinion is somewhat ambiguous as to whether Dr. Chanduri is talking about the 2012 accident or the 2013 accident. Certainly, Dr. Chanduri is coming to this, you know, a year after the 2012 accidents, the first time Dr. Chanduri has seen the claimant. And Dr. Chanduri is talking about, you know, two different injuries. The causal connection opinion that Dr. Chanduri gives is not clear as to which accident he's talking about. I think getting into those questions, I think the easiest way to look at that or the most helpful way to look at that would be to look at the testimony of Dr. Erickson, who said it could be a little bit of both. You know, there could have been some Dr. Erickson also acknowledges that following the 2012 accident petitioner went back to work with the same employer and was, you know, working in what I believe he characterized as a fairly vigorous position. He was doing physical manual labor. So I don't think it's unreasonable for Dr. Erickson to have concluded that both of those incidents could have been contributory in workers' compensation. You know, we don't generally deal with one sole cause. There doesn't have to be one sole cause to an accident. There can be a multitude. Counsel, let me ask you this. Are we missing a major issue with regard to Chanduri's opinion? Tell me if this is incorrect. Although Chanduri did initially, did not initially specify which work accident he was referring to, he stated during follow-up examination that the claimant had not gone back to work since the accident. Because the claimant returned to work after the September 11, 2012 accident, did he not? He did. Well, that accident, he would have had to return to work in order to have suffered a second accident. So isn't it clear that Chanduri was referring to the June 21, 2013 accident? That would certainly be a reasonable way to read Dr. Chanduri's opinion. And that's the way I argued in my brief that Dr. Chanduri had to have been talking about the second accident. Because as you said, Justice Hudson, he went back to work. And we know from the record, he didn't go back to work following the 2013 accident. Therefore, Dr. Chanduri must have been talking about the 2013. How else can you interpret it? I don't see any other way to interpret that particular statement from Dr. Chanduri at all. And as I said, Dr. Chanduri's opinions are not the only ones in the record. They're not the only opinions that the commission considered. The commission considered the opinions of Dr. Chanduri, Dr. Morgan, Kautsky, Dixon, Erickson. There were a whole lot of treating bodies involved in this case. It's not just, you know, just Erickson on his own or not just Chanduri on his own. And the commission also, of course, considered the opinions of Dr. Hennessey, the respondent section 12 examiner. Now, I want to talk a little bit about Dr. Hennessey's opinions are coming from sort of a faulty basis or a faulty starting point. As Mr. Drinkwine pointed out in his argument, he believes that the commission's analysis was faulty because they started from a faulty point that they failed to consider the discrepancies in the medical records. I would state the same thing is true of Dr. Hennessey in his testimony when he was specifically asked about causal relationship and maximum medical improvement to the 2013 accident. And this is from page 778 of the record. Dr. Hennessey says, I don't even think the concept of maximum medical improvement is applicable because I questioned the veracity of an injury. Dr. Hennessey's medical opinions are coming from Dr. Hennessey's premise that he doesn't think this accident happened. The commission determined that the commissioner or that the petitioner approved the accident. So Dr. Hennessey's opinions being based upon his assumption that the June accident didn't even occur can pretty much be thrown out, if not, you know, totally, but at least can be discredited by the fact that he doesn't seem to believe that there was an accident or an injury of June 2013. That seems to be where he's starting from. Now, Dr. Erickson, when he discussed the medical evidence, you know, goes through the positive discogram, the positive SSEP findings, you know, he acknowledges that it's possible that, you know, somebody of petitioner's age of his mid thirties could have this kind of pathology in the absence of a traumatic event. But he says he'd be on the low end of the bell curve. He would be on the unfortunate end of those with degenerative spinal conditions at his age. So it's reasonable for Dr. Erickson to conclude that the accident would have been contributory to the injury would have been contributory to the need for surgery. That was the conclusion that the commission drew. That was the conclusion that the circuit court affirmed on the manifest weight basis. And that's the conclusion that I would ask the court to affirm here today. Um, and that, I believe, you know, concludes the points that I'd like to make. I'm certainly happy to answer any additional questions, but I think I've covered what I what I would have liked to. Any further questions from the court? I don't believe there are Mr. Schmitz. Thank you. Thank you, Your Honor. Mr. Drinkwine, turn your mic on. There we go. You may reply. Thank you, Judge. Justice Hudson, I think, was the one who just asked how else you could, how else can you interpret that in reference to the statement by Dr. Chanduri that the patient hasn't worked since his accident? And I'm gathering we're all looking at page 376 of the record, the follow-up note. Your point is well taken, Your Honor, but I would also point this out. There's a date of incident at the top of that note, and I'll take that, or it's a DOI. I'll take that to mean date of incident, and that date is August 17, 2012. Also, Your Honor, in that follow-up note, Dr. Chanduri, who I'm sure sees hundreds, if not thousands of patients, does not acknowledge that there were two accidents in this case. So a way to interpret it is that he's mistaken that there's just one accident and he hasn't worked since then. With regard to the counsel's suggestion that the petitioner went to the doctor on the 22nd, that can't be because the medical records all show that he went to the doctor on June 21st. That's undisputed, and the medical records are correct under the statute. With regard to the causation, I just want to make my point again. There's a difference between an opinion that something is contributory and something is possible. Obviously, we all know that there can be more than one cause of an injury, and the injury is compensable under the act. Our contention is there's no valid opinion that the June 21, 2013 accident was a cause at all. In other words, there's no opinion to a reasonable degree of medical certainty that that was a cause. What we have from Dr. Erickson is basically an opinion that it's possible that it was either one of the accidents or a degenerative condition that had nothing to do with the work accident. That's possible, possible, possible. It's not opinion followed by, I also concede it could have been something else. I think that's what the law allows, but not the former. Your Honors, I think that's all the points that I want to make. In conclusion, on behalf of PSSI, and for all the reasons stated here and in our brief, we would request that this court reverse the commission's decision, or alternatively reverse the commission's decision to award any benefits beyond the October 18, 2013 date of Dr. Hennessey's IME. Thank you. Thank you, Mr. Drinkwine, Mr. Schmitz. This matter will be taken under advisement.